# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CARLOS DANACIO TRAYWICK,<br>Defendant. | Case No. 23-cr-2023-LTS<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.  INTRODUCTION

On April 19, 2023, the Grand Jury returned an Indictment charging Defendant with one count of Possession of a Firearm by a Felon in violation of 18 U.S.C. Section 922(g)(1) and 924(a)(8) and one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(C).  (Doc. 3.)

The matter before me is Defendant's motion to suppress.  (Doc. 14.)  The motion incorporated an inventory of items Defendant seeks to suppress which appears to be a law enforcement property list and includes: a 9mm Hi-Point Luger semiautomatic pistol, ammunition, drug paraphernalia, money, camera, cellphone, the in-car camera videos from two officers involved and dash camera video from a law enforcement vehicle.  (Doc. 14-1.)  This evidence was seized during or related to a vehicle stop on July 16, 2022 in Waterloo, Iowa.

The Government timely filed a response to the motion.  (Doc. 18.)  The Honorable C.J. Williams, United States District Court Judge, referred the motion to me for a Report and Recommendation.  I held a hearing on Defendant's motion to suppress on January 5, 2024.  (Doc. 19.)

1

The Government called the following witnesses: Black Hawk County Sheriff's Deputies Aaron Haas and Zachary Holbach. I found the witnesses credible. The following Government exhibits were admitted without objection:

1. Deputy Haas Report, dated July 16, 2022;
2. Body camera video from Deputy Haas;
3. Body camera video from Deputy Holbach; and
4. Deputy Holbach Report, dated July 17, 2022.[1]

At the conclusion of the hearing, the parties were offered the opportunity to submit post-hearing supplemental briefs. Neither party filed a supplemental brief.

For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

At about 11:30 p.m. on July 16, 2022, Deputy Haas was patrolling in Waterloo, Iowa when he saw a vehicle in front of him without functioning license plate lights. Deputy Haas decided to conduct a traffic stop. Defendant does not challenge the validity of the stop.

Deputy Haas approached the driver's side of the vehicle, explained the reason for the stop, and requested Defendant's driver's license, vehicle registration, and insurance. This initial discussion lasted approximately ninety seconds. (Gov. Ex. 2 at 00:26-1:49.) During this time Defendant admitted that the vehicle was not insured. (*Id.* at 1:34.) Deputy Haas returned to his patrol vehicle and requested backup.[2] Deputy Haas testified he had detected the odor of marijuana at the vehicle during his initial discussion with

---

[1] At the hearing, Deputy Holbach testified that he incorrectly dated his report July 17, 2022 and that it should have been dated July 16, 2022. (Holbach Hr'g Test. at 47-48.)

[2] I could not hear Deputy Haas's request for backup on the audio. However, Deputy Haas testified he did make the request and Deputy Holbach appeared and acted as backup. (Haas Hr'g Test. at 6.)

2

Defendant and wanted assistance to perform a search. (Haas H'rg Test. at 5-6.) Deputy Haas also testified that he would not normally alert a driver to this suspicion for officer safety reasons. (*Id.* at 5.)

Deputy Haas returned to Defendant's vehicle and asked him, "Do you mind hopping out and talking to me for just one second, man?" (Gov. Ex. 2 at 3:17). Defendant responded by immediately exiting the vehicle. As they walked toward the patrol car parked behind Defendant's vehicle, Deputy Haas broached the issue of the smell of marijuana from the vehicle. (*Id.* at 3:25-29.) There followed a brief discussion of what might have left a "lingering odor" of marijuana which Defendant attributed to his having recently loaned the vehicle to another person. (*Id.* at 3:30-41.) Deputy Haas announced his intention to search the vehicle based on this odor. (*Id.* at 3:42-45.) Defendant denied smoking marijuana and declined to permit a search of his person. (*Id.* at 3:52-59.) Deputy Holbach arrived and stood with Defendant and Deputy Haas near the shoulder of the road.

Deputy Holbach began to interact with Defendant as Deputy Haas readied himself to search Defendant's vehicle. Deputy Holbach positioned himself between Defendant and the traveled portion of the roadway. (Gov. Ex. 3 at 1:01.) Deputy Holbach requested Defendant keep his hands out of his pockets "since you won't let us search." (*Id.* at 1:09.) Defendant returned his hands to his pockets seconds later. (*Id.* at 1:23.) At this juncture, as Deputy Holbach testified, he could see into the pocket of Defendant's left front shorts pocket because there was so much "stuff" in them. (Holbach Hr'g Test. at 42-43.) In other words, the contents of the pocket were so large and/or heavy that the pocket hung open to allow Deputy Holbach to see into the pocket from the top. Deputy Holbach asked about the presence of a plastic bag in Defendant's pocket. (Gov. Ex. 3 at 1:25-28.) Defendant denied having any plastic bag. (*Id.* at 1:28-33.) Deputy Holbach announced that he could see marijuana in the pocket. (*Id.* at 1:38-42.) Deputy Haas

3

stopped before he could commence searching the vehicle and returned to the area by his patrol call to discuss the contents of Defendant's pockets. (Gov. Ex. 2 at 5:01-06.) Defendant denied having a bag of marijuana but pulled something from his pocket and briefly showed it to the officers before returning it to his pocket. (*Id.* at 5:16-17, Gov. Ex. 3 at 1:51-52.) Deputy Haas then asked him, "Is it meth or what?" and Defendant replied, "Yeah." (Gov. Ex. 2 at 5:19-20.)

Deputy Haas directed Defendant to place the object from his pocket on the hood of the patrol car. (*Id.* at 5:21.) Defendant turned and faced the hood of the patrol car with a bag in his left hand. Deputy Haas removed the bag from Defendant's hand and placed it on the hood. (*Id.* at 5:29-30.) Deputy Haas asked Defendant if there was anything else on his person. (*Id.* at 5:32.) Defendant denied the presence of weapons or anything sharp. (*Id.* at 5:39-40.) When asked if he had anything else in his pockets, Defendant removed two baggies of suspected marijuana. Defendant then pulled another bag from his pocket and Deputy Holbach stated, "See. There's what I saw." (Gov. Ex. 3 at 2:21-23.)

Deputy Haas asked Defendant to put his hands on the hood. Defendant briefly complied by leaning forward. (*Id.* at 2:24-30.) Deputy Haas began removing the contents of Defendant's front left shorts pocket, including a wallet and $180 of loose cash, as well as the back left pocket which contained a digital camera and miscellaneous items. (Gov. Ex. 1 and Gov. Ex. 2 at 5:54.) As Deputy Haas searched Defendant's pockets, Deputy Holbach asked Defendant his name. At this point, Defendant suddenly turned and fled. (Gov. Ex. 2 at 6:26, Gov. Ex. 3 at 3:00.) The deputies gave chase. Defendant ran across the street but soon tripped and fell. (*Id.* at 3:07.)

Defendant was handcuffed while he was on the ground. Deputy Haas searched his front right shorts pocket and removed a plastic baggie containing several substances that were also in baggies. (Gov. Ex. 1 at 2.) Deputies assisted Defendant to his feet and

4

walked him back to a patrol car where they completed a search of Defendant's person before placing him inside the patrol vehicle. A small plastic bag with suspected cocaine was found in the coin pocket of Defendant's shorts.

Deputy Haas then searched Defendant's vehicle. In a backpack located in front of the driver's seat, Deputy Haas located two glass pipes[3] with suspected methamphetamine residue, a gold digital scale with white residue, a 9mm Hi-Point Luger firearm with a loaded eight round magazine, 13 individually wrapped bags with suspected crack cocaine, a red digital scale with white residue, a cellphone, and other miscellaneous items found either on Defendant's person or in his vehicle which are listed in the inventory. (Gov. Ex. 1, Doc. 14-1.)

### III. DISCUSSION

#### A. *The Parties' Arguments*

Defendant argues the deputies lacked probable cause to search his person or vehicle because they did not smell marijuana before the searches. Defendant argues that his flight was caused by the illegal search of his person and therefore it cannot be considered in the probable cause analysis.

The Government asserts that because Deputy Haas smelled marijuana emanating from Defendant's vehicle, law enforcement had probable cause to search it and could do so without a warrant under the automobile exception to the warrant requirement of the Fourth Amendment. In addition, the Government contends law enforcement had probable cause to arrest Defendant for possession of the marijuana that was in plain view in his pocket. Moreover, the Government contends it could lawfully search Defendant's person incident to arrest for possession of controlled substances without a warrant.

---

[3] Deputy Haas's report states that he found two glass pipes in the vehicle search, however, the police inventory indicates that three glass pipes were found. *Compare* Gov. Ex. 1 at 2 *with* Doc. 14-1 at 1.

Defendant's possession of controlled substances on his person, the Government argues, strengthens the probable cause to search the vehicle.

Finally, the Government contends that even if the search of Defendant's person was invalid, law enforcement would have inevitably discovered the contraband in Defendant's vehicle following a search based solely on the odor of marijuana. The vehicle search would have led to the discovery of contraband and, in turn, to the arrest and subsequent search of Defendant's person.

## B. Relevant Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)); *Terry v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotations omitted). "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). Officers may only conduct investigatory stops if they have reasonable suspicion that criminal activity may be afoot. *United States v. Patrick*, 776 F.3d 951, 954 (8th Cir. 2015).

In the context of traffic violations, a police officer may stop a vehicle only when the officer has "'at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (quoting *United States v. Martin*, 411 F.3d 998, 1000 (8th Cir. 2005)).

6

Generally, a traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). A minor traffic violation is sufficient to establish probable cause for an officer to conduct a traffic stop even if the stop is pretext for another investigation. *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007) (quoting *United States v. Coney*, 456 F.3d 850, 855-56 (8th Cir. 2006)). An officer's actual motivation for making the stop beyond simply issuing a traffic violation is irrelevant provided that the officer has an objectively good reason for making the stop. *Id*.

Warrantless searches are *per se* unreasonable, with a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). However, courts have long recognized the "automobile exception" to the Fourth Amendment. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003); *see generally Carroll v. United States*, 267 U.S. 132, 158-59 (1925). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Kennedy*, 427 F.3d at 1140-41 (citations omitted); *see also United States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006) ("The warrantless search of a vehicle is constitutional pursuant to the automobile exception to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence before the search began.") (Quotation omitted)). The burden is on the Government to justify warrantless searches. *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984).

In *Wells*, the Eighth Circuit Court of Appeals articulated probable cause for searching a vehicle during a lawful traffic stop:

> "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States*

7

> *v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000). . . . "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

347 F.3d at 287-88.

In *United States v. Merrett*, 8 F.4th 743 (8th Cir. 2021), the Eighth Circuit stated:

> The Fourth Amendment requires law-enforcement officers to obtain a warrant before initiating a search, but "[d]uring a lawful investigatory [traffic] stop, officers may search a vehicle [without a warrant] when they develop probable cause to believe it contains contraband or evidence of criminal activity." *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020). During this traffic stop, officers smelled marijuana emanating from the SUV. And "[w]e have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *Id*. Thus, the officers' search of the SUV did not violate [the defendant's] Fourth Amendment rights.

*Id*. at 751.

C.   *Analysis*

This case hinges on the odor of marijuana. If Deputy Haas is to be believed that he smelled marijuana when he first approached Defendant's vehicle, then the subsequent searches and seizures (i.e., Defendant's removal from the car, the seizure and search of his person, and the search of the vehicle) are readily justified as explained below. Defendant's chief objection (indeed, his only articulated objection) is that Deputy Haas did not mention the smell of marijuana during his initial encounter with Defendant or at any point before Defendant was asked to leave the vehicle.

8

I recommend that the Court believe Deputy Haas. Defendant cites no support for the proposition that law enforcement must contemporaneously disclose indicia of probable cause as it becomes known either for the benefit of the Defendant or to make a record on a body camera/microphone. Moreover, Deputy Haas offered a perfectly believable explanation for why he waited to tell Defendant about the smell of marijuana. Deputy Haas explained he did not want to escalate the encounter to a drug search until he was prepared to make the search. Deputy Hass testified that for safety purposes, "[t]ypically it's not something we offer up on initial contact. [I w]ait until someone else has arrived on scene before approaching that." (Haas Hr'g Test. at 5.) Additionally, Deputy Haas stated that the destruction of evidence and the risk of a Defendant fleeing are other factors that support waiting for backup to arrive before discussing the odor of marijuana with a suspect. (*Id.* at 32-33.) Deputy Haas requested Defendant's driver's license, registration, and insurance. Upon receiving the requested paperwork, Deputy Haas returned to his patrol vehicle and requested another patrol officer to his location "[s]o a search of the vehicle could be conducted." (*Id.* at 6.) Deputy Haas also explained that it is the general policy to wait for backup to make search a search. (*Id.* at 20-21.) Thus, there is nothing surprising or suspect about Deputy Haas's decision to wait for backup and his return to Defendant's vehicle to discuss the odor of marijuana emanating from the vehicle.

Because Deputy Haas's testimony regarding the smell of marijuana should be credited, all the subsequent searches were justified. The vehicle was subject to search based solely on the odor of marijuana under *Williams*. *See Williams*, 955 F.3d at 737 (holding that "the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception"). I agree with the Government that the search of Defendant's person was justified in multiple ways. First, Deputy Holbach saw suspected marijuana in plain view in Defendant's pocket. *See United States v. Class*,

883 F.3d 734, 737 (8th Cir. 2018) ("Under the plain view doctrine, "if police are lawfully in a position from which they view an object, it its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.") (Quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). When confronted with Deputy Holbach's observation of marijuana, Defendant denied having marijuana and produced a baggie which Defendant identified and admitted was methamphetamine. Both Deputy Holbach's observation of a baggie of marijuana in plain view and Defendant's production of a baggie which he admitted was a baggie of methamphetamine alone or together would have justified a search of Defendant incident to arrest. *See United States v. Richardson*, 40 F.4th 858, 865 (8th Cir. 2022) (providing that the search of an individual incident to arrest is proper); *see also United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) ("'Among the exceptions to the warrant requirement is a search incident to a lawful arrest. . . .' Such a search may include a search of the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction.") (Quoting and citing *Arizona v. Gant*, 556 U.S. 332, 338-39 (2009), in turn citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). Third, even if Defendant had not made any admissions or left the contents of his pockets open to view by Deputy Holbach, the search of the vehicle would have led to the discovery of contraband and the subsequent arrest of Defendant. This arrest would have subjected Defendant to a search of his person and the discovery of the contraband in his pockets.

Thus, I recommend the Court conclude that all the searches were justified if it concludes Deputy Haas smelled marijuana emanating from Defendant's vehicle when he first approached Defendant's vehicle and requested Defendant's driver's license and registration.

If the Court does not credit Deputy Haas's testimony or otherwise declines to find the searches justified by the smell of marijuana, I recommend the Court grant the motion

to suppress. In this case, neither party meaningfully addresses the bulk of the search and seizure issues that might be lurking about from the time Defendant left his car until the search was completed.[4]  For example, if there was no smell of marijuana, was the stop prolonged such that the on-going interaction with Defendant was unconstitutional?  Was there probable cause to arrest Defendant for the license plate violation or the failure to maintain insurance that would have justified prolonging the stop or even his arrest and a search of his person?  Would interaction with the Defendant about these traffic violations somehow lead to the plain-view inspection of Defendant's pocket and/or his attempt to flea?  The record makes such an analysis difficult, at best.

The Government does not mention any alternative bases to support the searches if the Court does not believe they are supported by the reasonable suspicion of the presence of marijuana.  Defendant suggests that the Court cannot consider the fact he fled from law enforcement to assess probable cause because it was tainted by the "unreasonable search of his person."  (Doc. 14-2 at 3.)

Ultimately, what might have happened if the Deputy Haas did not proceed based on his suspicion about marijuana is wholly conjectural.  Perhaps Deputy Haas could have removed Defendant from the car or at least asked him to step out to address either the license plates lights or failure to have insurance.  However, it is merely speculation to suggest that the deputy would have, in fact, done so and that this decision would have led to the discovery of drugs on Defendant's person.  Any subsequent flight, arrest and/or search of the vehicle is even more speculative.  Thus, if the Court concludes Deputy Haas's initial decision to search the vehicle based on the smell of marijuana is not justified, then any chain of events that might have resulted in a legal search (e.g., a search

---

[4] I am not critical of the parties for focusing the Court's attention on the issues they perceive as important.  Far from it.  No doubt their review of the available discovery has shown them what arguments the evidence might support.

11

incident to arrest or a plain-view search) is too speculative to support a search of Defendant's person or vehicle and the evidence should be suppressed.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress.  **(Doc. 14.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Crim. P. 59.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 24th day of January, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa