# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR23-2023-LTS-MAR |
| vs. | **ORDER** |
| CARLOS DANACIO TRAYWICK, | |
| Defendant. | |

This matter is before me on a Report and Recommendation (R&R) (Doc. 24) in which the Honorable Mark A. Roberts, United States Magistrate Judge, recommends that I deny defendant Carlos Traywick's motion (Doc. 14) to suppress evidence. Traywick has filed objections (Doc. 31).

## I. BACKGROUND

Traywick is charged in a superseding indictment (Doc. 21) with one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 841(b)(1)(C).[1] His motion (Doc. 14) to suppress seeks the exclusion of evidence obtained during a traffic stop. Specifically, Traywick seeks to suppress the following items: a 9 MM Hi-point Luger firearm, ammunition (one loaded magazine in the firearm, an unloaded magazine with eight rounds and three Winchester casings), three glass pipes, a cut red straw, a clear plastic container with blue twist lid, a gold digital scale, a red digital scale, $180 cash, a black Kodak camera, a cellphone, Deputy Aaron Haas' in-car and body camera

---

[1] The initial indictment (Doc. 2) was returned on April 19, 2023.

video, Deputy Zachary Holbach's in-car and body camera video and Traywick's black 2007 Chevrolet Impala. Doc. 14-1 at 1-3.

The Government resists. Doc. 18. Judge Roberts held an evidentiary hearing on January 5, 2024. Doc. 19. The Government called Deputy Haas and Deputy Holbach as witnesses. Doc. 24 at 2. Judge Roberts also admitted the following exhibits: (1) Haas' report (Doc. 18-2, Gov. Ex. 1); (2) clipped body camera video from Haas (Gov. Ex. 2); (3) clipped body camera video from Holbach (Gov. Ex. 3); (4) Holbach's report (Doc. 18-3, Gov. Ex. 4); and (5) full body camera video from Haas (Defense Ex. A). Doc. 19 at 2.

Judge Roberts issued his R&R (Doc. 24) on January 24, 2024. Traywick filed his objections (Doc. 31) on February 21, 2024.

## II.   THE R&R

### A.   *Findings of Fact*

Judge Roberts made the following findings of fact:

> At about 11:30 p.m. on July 16, 2022, Deputy Haas was patrolling in Waterloo, Iowa when he saw a vehicle in front of him without functioning license plate lights. Deputy Haas decided to conduct a traffic stop. Defendant does not challenge the validity of the stop.
>
> Deputy Haas approached the driver's side of the vehicle, explained the reason for the stop, and requested Defendant's driver's license, vehicle registration, and insurance. This initial discussion lasted approximately ninety seconds. (Gov. Ex. 2 at 00:26-1:49.) During this time Defendant admitted that the vehicle was not insured. (*Id.* at 1:34.) Deputy Haas returned to his patrol vehicle and requested backup. Deputy Haas testified he had detected the odor of marijuana at the vehicle during his initial discussion with Defendant and wanted assistance to perform a search. (Haas H'rg Test. at 5-6.) Deputy Haas also testified that he would not normally alert a driver to this suspicion for officer safety reasons. (*Id.* at 5.)
>
> Deputy Haas returned to Defendant's vehicle and asked him, "Do you mind hopping out and talking to me for just one second, man?" (Gov.

2

Ex. 2 at 3:17). Defendant responded by immediately exiting the vehicle. As they walked toward the patrol car parked behind Defendant's vehicle, Deputy Haas broached the issue of the smell of marijuana from the vehicle. (*Id.* at 3:25-29.) There followed a brief discussion of what might have left a "lingering odor" of marijuana which Defendant attributed to his having recently loaned the vehicle to another person. (*Id.* at 3:30-41.) Deputy Haas announced his intention to search the vehicle based on this odor. (*Id.* at 3:42-45.) Defendant denied smoking marijuana and declined to permit a search of his person. (*Id.* at 3:52-59.) Deputy Holbach arrived and stood with Defendant and Deputy Haas near the shoulder of the road.

Deputy Holbach began to interact with Defendant as Deputy Haas readied himself to search Defendant's vehicle. Deputy Holbach positioned himself between Defendant and the traveled portion of the roadway. (Gov. Ex. 3 at 1:01.) Deputy Holbach requested Defendant keep his hands out of his pockets "since you won't let us search." (*Id.* at 1:09.) Defendant returned his hands to his pockets seconds later. (*Id.* at 1:23.) At this juncture, as Deputy Holbach testified, he could see into the pocket of Defendant's left front shorts pocket because there was so much "stuff" in them. (Holbach Hr'g Test. at 42-43.) In other words, the contents of the pocket were so large and/or heavy that the pocket hung open to allow Deputy Holbach to see into the pocket from the top. Deputy Holbach asked about the presence of a plastic bag in Defendant's pocket. (Gov. Ex. 3 at 1:25-28.) Defendant denied having any plastic bag. (*Id.* at 1:28-33.) Deputy Holbach announced that he could see marijuana in the pocket. (*Id.* at 1:38-42.) Deputy Haas stopped before he could commence searching the vehicle and returned to the area by his patrol call [sic] to discuss the contents of Defendant's pockets. (Gov. Ex. 2 at 5:01-06.) Defendant denied having a bag of marijuana but pulled something from his pocket and briefly showed it to the officers before returning it to his pocket. (*Id.* at 5:16-17, Gov. Ex. 3 at 1:51-52.) Deputy Haas then asked him, "Is it meth or what?" and Defendant replied, "Yeah." (Gov. Ex. 2 at 5:19-20.)

Deputy Haas directed Defendant to place the object from his pocket on the hood of the patrol car. (*Id.* at 5:21.) Defendant turned and faced the hood of the patrol car with a bag in his left hand. Deputy Haas removed the bag from Defendant's hand and placed it on the hood. (*Id.* at 5:29-30.) Deputy Haas asked Defendant if there was anything else on his person. (*Id.* at 5:32.) Defendant denied the presence of weapons or anything sharp. (*Id.* at 5:39-40.) When asked if he had anything else in

3

his pockets, Defendant removed two baggies of suspected marijuana. Defendant then pulled another bag from his pocket and Deputy Holbach stated, "See. There's what I saw." (Gov. Ex. 3 at 2:21-23.)

Deputy Haas asked Defendant to put his hands on the hood. Defendant briefly complied by leaning forward. (*Id.* at 2:24-30.) Deputy Haas began removing the contents of Defendant's front left shorts pocket, including a wallet and $180 of loose cash, as well as the back left pocket which contained a digital camera and miscellaneous items. (Gov. Ex. 1 and Gov. Ex. 2 at 5:54.) As Deputy Haas searched Defendant's pockets, Deputy Holbach asked Defendant his name. At this point, Defendant suddenly turned and fled. (Gov. Ex. 2 at 6:26, Gov. Ex. 3 at 3:00.) The deputies gave chase. Defendant ran across the street but soon tripped and fell. (*Id.* at 3:07.)

Defendant was handcuffed while he was on the ground. Deputy Haas searched his front right shorts pocket and removed a plastic baggie containing several substances that were also in baggies. (Gov. Ex. 1 at 2.) Deputies assisted Defendant to his feet and walked him back to a patrol car where they completed a search of Defendant's person before placing him inside the patrol vehicle. A small plastic bag with suspected cocaine was found in the coin pocket of Defendant's shorts.

Deputy Haas then searched Defendant's vehicle. In a backpack located in front of the driver's seat, Deputy Haas located two glass pipes with suspected methamphetamine residue, a gold digital scale with white residue, a 9mm Hi-Point Luger firearm with a loaded eight round magazine, 13 individually wrapped bags with suspected crack cocaine, a red digital scale with white residue, a cellphone, and other miscellaneous items found either on Defendant's person or in his vehicle which are listed in the inventory. (Gov. Ex. 1, Doc. 14-1.)

Doc. 24 at 2-5 (footnote omitted).

### B. *The Parties' Arguments*

Judge Roberts summarized the parties' arguments as follows:

Defendant argues the deputies lacked probable cause to search his person or vehicle because they did not smell marijuana before the searches. Defendant argues that his flight was caused by the illegal search

4

of his person and therefore it cannot be considered in the probable cause analysis.

The Government asserts that because Deputy Haas smelled marijuana emanating from Defendant's vehicle, law enforcement had probable cause to search it and could do so without a warrant under the automobile exception to the warrant requirement of the Fourth Amendment. In addition, the Government contends law enforcement had probable cause to arrest Defendant for possession of the marijuana that was in plain view in his pocket. Moreover, the Government contends it could lawfully search Defendant's person incident to arrest for possession of controlled substances without a warrant. Defendant's possession of controlled substances on his person, the Government argues, strengthens the probable cause to search the vehicle.

Finally, the Government contends that even if the search of Defendant's person was invalid, law enforcement would have inevitably discovered the contraband in Defendant's vehicle following a search based solely on the odor of marijuana. The vehicle search would have led to the discovery of contraband and, in turn, to the arrest and subsequent search of Defendant's person.

Doc. 24 at 5-6.

### C.  *Recommendations*

After noting that the motion "hinges on the odor of marijuana," Judge Roberts recommended "that the Court believe Deputy Haas." Doc. 24 at 8-9. After explaining the reasons for that recommendation, Judge Roberts found that Traywick's vehicle was subject to search based on the odor of marijuana. *Id*. at 9. He further found that the search of Traywick's person was permissible for multiple reasons:

1.  Deputy Holbach saw suspected marijuana in plain view in Traywick's pocket.

2.  Traywick produced a baggie and admitted that it contained methamphetamine.

3. The legally-permissible search of the vehicle would have led to the discovery of and Traywick's arrest of Defendant, which would have then led to a search of his person and the discovery of the contraband in his pockets.

*Id*. at 9-10. For all of these reasons, Judge Roberts recommends that Traywick's motion to suppress be denied.

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States*

6

*v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV.   DISCUSSION

### A.   *Traywick's Objections*

Traywick asserts three objections. First, Traywick objects to the finding that Haas was credible in smelling marijuana. Doc. 31 at 1. Second, Traywick "objects to the reasoning behind the [Judge Roberts'] finding that Deputy Haas' explanation for waiting to tell [Traywick] about the marijuana smell was reasonable." *Id.* at 3. Third, Traywick objects to Judge Roberts' reliance on Haas' "explanation that he waited to disclose his supposed detection of the odor of marijuana because of the risk of 'destruction of evidence and the risk of a Defendant fleeing.'" *Id.* Ultimately, Traywick requests that I find "Haas did not smell the odor of marijuana." *Id.* at 4.

### B.   *Analysis*

Based on my de novo review of the record, I adopt Judge Roberts' findings of fact and resulting recommendations without modification. As such, Traywick's objections will be overruled.

Haas provided multiple, logical reasons as to why he did not disclose to Traywick that he smelled marijuana upon his initial approach. He explained that it is his typical practice to "wait until someone else has arrived on scene before approaching that" topic. Doc. 24 at 9. He also explained that this is for safety purposes. *Id.* He

7

noted that the destruction of evidence and the risk of flight are both factors that support waiting for backup. *Id.*

Although Traywick challenges these explanations, stating that "return[ing] to [Haas'] own vehicle actually provided the Defendant with the opportunity to drive away (elude) and/or destroy evidence," he points to no evidence disproving them. Doc. 31 at 4. Neither the hypothetical opportunity to flee, nor the "near ubiquity of marijuana use," proves that Haas did not smell marijuana upon his initial approach. Nor does the fact that Haas did not immediately inform Traywick that he smelled marijuana demonstrate that Haas is being untruthful, especially in light of Haas' logical explanation for the delay. While Traywick may not believe Haas, the court does. I therefore adopt Judge Roberts' recommendation to credit Haas' testimony and, as a result, find that he smelled the odor of marijuana on his initial approach of Traywick's vehicle.

Under the Fourth Amendment, warrantless searches "are *per se* unreasonable, subject to a few well-established exceptions." *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). The "automobile exception" allows officers to conduct a warrantless search if, at the time of the search, they have probable cause to believe the vehicle contains contraband or other evidence of a crime. *Id.* at 1140-41 (citing *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Kennedy*, 427 F.3d at 1141 (8th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Wells*, 347 F.3d at 287 (8th Cir. 2003) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).

The parties agree that Haas lawfully stopped Traywick's vehicle due to an unilluminated license plate. Doc. 14-2 at 1 n.2; Doc. 18-1 at 5. Haas smelled marijuana emanating from the vehicle when he approached it. This gave Haas probable cause to search Traywick's vehicle under the automobile exception. *See Williams*, 955 F.3d at 737.

The search of Traywick's person was permissible under the plain view doctrine, as (1) as Holbach saw a bag of marijuana in Traywick's pocket and (2) Traywick showed a bag of methamphetamine to both officers. *See United States v. Class*, 883 F.3d 734, 7737 (8th Cir. 2018) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)) ("Under the plain view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'"). The search of Traywick's person was also justified as a search incident to arrest once he was observed to be in possession of prohibited substances. *See United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) (explaining a search incident to a lawful arrest "may include a search of the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction").

Because both the search of Traywick's vehicle and the search of his person were permissible under the Fourth Amendment, his objections will be overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Traywick's objections (Doc. 31) to the Report and Recommendation (Doc. 24) are **overruled**;

2. I **accept** the Report and Recommendation (Doc. 24) without modification;

3. Pursuant to the Report and Recommendation, Traywick's motion (Doc. 14) to suppress evidence is **denied**.

**IT IS SO ORDERED** this 18th day of March, 2024.

_____
Leonard T. Strand
United States District Judge